Claudia Mary BOSWELL, et al.,

v.

BLUDWORTH BOND SHIPYARD, INC., et al.,

v.

AMATO'S LINEHANDLER'S INC., et al.,

In the Matter of the Complaint of CENAM SHIPPING LTD., et al.

Civ. A. No. G–93–391.

United States District Court, S.D. Texas, Galveston Division.

June 3, 1994.

Michael M. Todaro, Houston, TX, Alton C. Todd, Todd & Hagood, Alvin, TX, for Claudia Mary Boswell, Shondra Rosser, Willis Olan Boswell, Leola Boswell.

Alan B. Folger, Jeffrey D. Roberts, Roberts Markel Folger & Powers, Houston, TX, for Bludworth Bond Shipyard, Inc.

Stephen Mark Strawn, Royston Rayzor Vickery Williams, Galveston, TX, Jeffrey D. Roberts, Roberts Markel Folger & Powers, Houston, TX, for G & H Towing Co.

Robert C. Davee, Kyle D. Stallones, Eastham Watson Dale & Forney, Houston, TX, for Cenam Shipping, Ltd., Hungarian Shipping Co., Ltd.

Kenneth G. Engerrand, John R. Walker, Brown Sims Wise & White, Houston, TX, for Amato Linehandlers, Inc., The Hartford Ins. Group.

Eric G. Carter, Houston, TX, for Ship Services, Inc.

Steven Lynn Roberts, Fulbright & Jaworski, Houston, TX, for Amato, Inc.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

KENT, District Judge.

Claudia Boswell brings this action for wrongful death under the general maritime law as the administratrix of the estate of Danny Boswell, her late husband. Danny Boswell drowned when the line-handling boat on which he was working capsized. The accident occurred during an attempt to move the M/V Balaton from a dry-dock owned by Defendant Bludworth Bond Shipyard. The M/V Balaton was owned by Cenam Shipping and operated by The Hungarian Shipping Co. ("Mahart"). Before the Court are the motion for summary judgment by Cenam and Mahart, claiming no liability as a matter of law; and the motion for partial summary judgment by Bludworth Bond, claiming that Plaintiff Shondra Rosser is not a permissible beneficiary of this action. Both motions are **DENIED.**

#### Shipowner Liability

Cenam and Mahart claim that they cannot be liable for any negligence in the operation which resulted in Danny Boswell's death because all control over the M/V Balaton had been relinquished to the shipyard, citing *Sturgis v. Boyer*, 65 U.S. 110, 24 How. 110, 16 L.Ed. 591 (1861). In *Sturgis*, the Supreme Court held that a shipowner cannot be held liable for an accident which occurs while the ship is being moved by agents of a shipyard, where the ship is not under its own power, the shipyard had contractually assumed responsibility for maneuvering the dead ship, and the ship's master was not on board.

The facts of *Sturgis*, however, are distinguishable from those at bar. *Sturgis* stands for the logical proposition that a shipowner cannot be held responsible for the movement of a ship over which it had no control, constructive or real. Here, however, the master of the Balaton was on the bridge during the attempted maneuvers. The main line-handler for the operation informed the master that he was not a licensed pilot, and expressed concerns to the master that the weather conditions would be hazardous. The master contacted the tug-boat which was to move the ship and, after the tug captain assured him that the tug could manage the maneuver, the master advised the line-handler to proceed. The master's participation in this decision-making process led the line-handler to believe that the master had assumed ultimate responsibility for the opera-

tion. Therefore, a fact issue exists as to the shipowner/operator's liability for the subsequent accident, and summary judgment must be **DENIED.** *See Avondale Indus., Inc. v. International Marine Carriers, Inc.,* 15 F.3d 489, 492–93 (5th Cir.1994) (shipowner is not immune from liability for accident occurring while pilot taking dead ship from dry-dock, where master was on bridge during operation but failed to observe the operation or intervene in pilot's decision-making).

### Step–Child Recovery

Shondra Rosser is Claudia Boswell's daughter from a previous marriage. Shondra was three years old when Claudia married Danny Boswell in 1980, and there is evidence to indicate that Danny raised Shondra as his daughter from that time until his death. Danny Boswell never formally adopted Shondra, however. Defendant Bludworth Bond claims that this lack of adoption bars Shondra's wrongful death recovery.

Bludworth Bond recognizes that the Supreme Court has suggested that the appropriate schedule of beneficiaries for wrongful death actions is that provided by the Death on the High Seas Act ("DOHSA"). *Moragne v. States Marine Lines,* 398 U.S. 375, 407–08, 90 S.Ct. 1772, 1791–92, 26 L.Ed.2d 339 (1970). Moreover, the Fifth Circuit has specifically dictated that this schedule provides the appropriate guidance. *In re P & E Boat Rentals, Inc.,* 872 F.2d 642, 649 (5th Cir. 1989). Bludworth further admits that DOHSA provides an action for the benefit of "the decedent's wife, husband, parent, child, or dependent relative...." 46 U.S.C. § 761.

At this point, however, the Defendant's reasoning parts with logic. Bludworth next argues that (a) the Court must look to state law to define the familial terms in DOHSA; (b) state case-law interpreting the Texas Wrongful Death Statute has excluded recovery by children who are not the natural or adopted child of the decedent, *Amos v. Central Freight Lines,* 575 S.W.2d 636 (Tex.Civ. App.—Houston [1st Dist.] 1978, no writ); and (c) therefore Shondra Rosser was not Danny Boswell's "child" as defined by Texas law.

If DOHSA and the Texas Wrongful Death Statute shared the same scope, this argument would be persuasive. Because DOHSA's beneficiary schedule is more expansive, however, the limitations of the Texas statute are irrelevant to the question at hand. Under the Texas statute, the question of a child's specific legal relationship to the deceased is crucial because the language of the statute itself limits its application to "the exclusive benefit of the surviving spouse, children, and parents of the deceased." Tex. Civ.Prac. & Rem.Code Ann. § 71.004 (Vernon 1986). This strict statutory limitation is the sole basis for the Texas courts' denying recovery to children in Shondra's position. *Amos,* 575 S.W.2d at 638. DOHSA, on the other hand, also provides recovery for "dependent relatives." Therefore, the relevant inquiry here is not whether Shondra would be defined as Danny Boswell's "child" under Texas law, but whether she was his "dependent relative" so as to be a permissible beneficiary under DOHSA.

Bludworth does not contest here that Shondra was Danny Boswell's dependent, nor does it address whether she was his "relative" within the meaning of DOHSA. Addressing this issue a quarter-century ago, however, the First Circuit reasoned:

"Relative" is ordinarily understood to include persons connected with another by affinity as well as blood. Only in the rather specialized areas of the construction of wills, statutes affecting the distribution of property in intestacy, and auto insurance policies is the term read narrowly to include only consanguines. Here the policy of the statute does not call for such a restrictive reading of the term. A distinction between affines and consanguines would not be well-founded, since the Act is intended to benefit persons suffering pecuniary loss by reason of a death within its scope. Whether such a loss is suffered has nothing to do with whether the relationship is one of blood or of affinity.

*In re United States,* 418 F.2d 264, 270–71 (1st Cir.1969) (citations and footnotes omitted).

Danny Boswell's marriage to Shondra's mother created a relationship of affinity

464

between Danny and Shondra—that of step-parent to step-child. *See id.* at 271 (holding that step-children are "relatives" of their step-parents within the meaning of DOHSA). Because this relationship would have permitted recovery under DOHSA, recovery is also allowed through a wrongful death action under the general maritime law. *Green v. Ross,* 338 F.Supp. 365, 366 (S.D.Fla.1972), *aff'd,* 481 F.2d 102 (5th Cir.1973), *cert. denied,* 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973). Accordingly, Bludworth's motion for partial summary judgment is **DENIED.**

\*    \*    \*    \*    \*    \*

If the parties can present to the Court compelling and relevant new evidence or legal authority affecting these issues, which they could not through the exercise of due diligence have presented on original submission of this motion, the parties are, of course, invited to bring these to the Court's attention. Otherwise, the parties are further **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

IT IS SO ORDERED.